UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDRE BERGERON                                    CIVIL ACTION

VERSUS                                            CASE NO. 20-1450

HMO LOUISIANA, INC.                               SECTION: "G"(3)

## ORDER AND REASONS

Plaintiff Andre Bergeron ("Plaintiff") brings this action for review of the denial of health benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").[1] Defendant HMO Louisiana, Inc. ("Defendant") opposes Plaintiff's request for review.[2] Having considered the briefs, the memoranda, the arguments made at oral argument, the record, and the applicable law, the Court affirms the denial of benefits and dismisses Plaintiff's claims with prejudice. The Court declines to award attorney's fees or costs to either party.

## I. Background

### A.    *The Plan*

Plaintiff Andre Bergeron was covered under an employee health benefit plan (the "Plan") with Defendant.[3] The Plan, a straight HMO plan, "generally pays Benefits only when services are

---

[1] Rec. Doc. 28.

[2] Rec. Doc. 36.

[3] AR 1–112.

1

obtained from a Provider who is in the [Defendant] Network."[4] The Plan, however, provides for two exceptions to this general rule, providing coverage for out-of-network services if: (i) Defendant determines that the services are not available from an in-network provider within a 75-mile radius of Plaintiff's home and Defendant issues written approval to Plaintiff to obtain the out-of-network services or (ii) Plaintiff has an Emergency Medical Service and is unable to obtain care from an in-network provider.[5] The Plan provides that under the first exception, Defendant will approve out-of-network treatment "only if [Defendant] determine[s] that the services **cannot** be provided by a Network Provider within a seventy-five (75) mile radius of the Member's home."[6] The Plan further states that "if [Defendant] does not approve the use of the Non-Network Provider and issue any required Authorization before services are rendered, no Benefits will be paid and the Member may be responsible for all charges."[7]

Pertinent to this case, the Plan provides coverage for "Mental Health and Substance Use Disorders."[8] The Plan also covers treatment related to Autism Spectrum Disorders.[9] However, equally important to this case, the Plan specifically exempts any "[s]ervices, treatments, procedures, equipment, drugs, devices, items or supplies that are not Medically Necessary,"

---

[4] AR 11.

[5] *Id*.

[6] AR 60.

[7] *Id*.

[8] AR 45.

[9] AR 53.

whether in-network or out-of-network.[10] The Plan defines Medically Necessary as:

> Healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies that a Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
> A. in accordance with nationally accepted standards of medical practice;
> B. clinically appropriate, in terms of type, frequency, extent, level of care, site and duration, and considered effective for the patient's illness, injury or disease; and
> C. not primarily for the personal comfort or convenience of the patient or Provider, and not more costly than alternative services, treatment, procedures, equipment, drugs, devices, items or supplies or sequence thereof and that are as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease . . . .[11]

## B. *Factual Background*

Plaintiff seeks review of Defendant's denial of Plaintiff's claim for out-of-network services. Plaintiff alleges that he suffered from a "multitude of complex medical conditions."[12] Beginning in 2016, Plaintiff was treated by Dr. Panagiotis Markopoulos ("Dr. Markopoulos").[13] In 2017, Plaintiff was referred to Dr. Robert Gervey ("Dr. Gervey") to undergo psychological testing.[14] Through such testing, Dr. Gervey diagnosed Plaintiff with Delusional Disorder, Bipolar Disorder, Psychoactive Substance Abuse, Paranoid Personality Disorder, Narcissistic Personality Disorder with Negativistic (Passive-Aggressive) Personality Traits and Sadistic Personality

---

[10] AR 63.

[11] AR 25.

[12] Rec. Doc. 28 at 5.

[13] AR 1213.

[14] AR 165.

Traits.[15]

Plaintiff alleges that beginning in January 2019, his health became an "emergency."[16] Despite working with Dr. Markopoulos to find an in-network provider for mental health and substance use disorder, Plaintiff alleges that he was denied treatment by in-network facilities because "they did not have the personnel capable of addressing [Plaintiff]'s complex medical conditions."[17] Ultimately, Plaintiff was admitted to Pine Grove Behavioral Health & Addiction Services ("Pine Grove"), an out-of-network inpatient facility in Mississippi, and underwent treatment from January 14, 2019 to April 15, 2019.[18] Prior to starting treatment at Pine Grove, Plaintiff submitted his claims to Defendant for authorization but Defendant denied coverage.[19]

Upon his admission to Pine Grove on January 14, 2019, Plaintiff underwent multiple assessments.[20] Plaintiff's admission assessment notes that he suffered from anxiety and depression.[21] It notes that his medical history includes post-traumatic stress disorder, anxiety, depression, and autism.[22] The report states that he "feels irritable, has impaired impulse control, especially with decision making. Has trouble sleeping."[23] It further summarizes Plaintiff's mood

---

[15] *Id.*

[16] Rec. Doc. 1-2 at 6.

[17] Rec. Doc. 28 at 7.

[18] AR 338.

[19] AR 132.

[20] AR 342; AR 356.

[21] AR 343.

[22] *Id.*

[23] AR 345.

as including anxiety, depression, grief or loss, panic attacks, worrying, mood swings, and guilt, and states:

> He reports anxiety since 12. Depression since 15. He feels grief over losing his grandpa 2 years ago. He has panic attacks but not as often as he used to. He worries frequently about safety [sic] things he says. He feels guilt about taking his medicine more than was prescribed and it making him have to come into treatment. He notices mood swings.[24]

Plaintiff's report notes that Plaintiff was prescribed Vyvance but usually took double the amount prescribed.[25]

Plaintiff also underwent a "Residential Addictionology Evaluation" upon being admitted.[26] The evaluation notes that Plaintiff states "over the past 2 years his stimulant use has increased. Was on a higher dose of prescription Adderall and after the dose was lowered [Plaintiff] states he began seeking out stimulants that he could buy from friends or others. States is typically over 2 weeks is about 1-1.5 months [sic] worth."[27] Plaintiff reported experiencing "loss of control, using more than originally intended, craving/preoccupation, inability to cut down on his own, social problems secondary to use (a family concern about behaviors), physical or psychological problems secondary to use (anxiety and panic worsening), tolerance, and withdrawals."[28] The evaluation also noted a summary of a Call Center assessment.[29] The summary details Plaintiff's family's

---

[24] AR 346.

[25] *Id*.

[26] AR 356.

[27] *Id*.

[28] AR 357.

[29] *Id*.

concerns that Plaintiff is "paranoid and thinks that everyone is against him" and recounts how Plaintiff told his mom that he was "going to burn down the house and he told his parents . . . they would be killed."[30] Plaintiff's mother alleged that Plaintiff "abuses pills" and was involved with stealing.[31] The evaluation concludes with Plaintiff's diagnoses—severe stimulant use disorder, moderate ADHD, and moderate substance-induced insomnia—and estimates Plaintiff's length of stay at approximately 60 to 90 days.[32]

During treatment at Pine Grove, Plaintiff underwent a psychological evaluation by Robert Whitley ("Whitley") and Lacey Loy Herrington ("Herrington").[33] In such evaluation, Plaintiff was administered the Personality Assessment Inventory ("PAI") and Million Clinical Multiaxial Inventory ("MCMI-IV") tests.[34] Plaintiff's results from the PAI test "suggested the possible presence of Other Substance Dependence, Cyclothymic Disorder, Bipolar I Disorder, Specific Phobia, and Personality Disorder NOS (Mixed Borderline, Antisocial, Narcissistic, and Paranoid features)."[35] Plaintiff's results from the MCMI-IV test "suggested the possible presence of avoidant, dependent, turbulent, paranoid, and negativistic traits in addition to clinical syndromes including generalized anxiety, bipolar spectrum, and drug dependence."[36] Herrington and Whitley

---

[30] *Id*.

[31] *Id*.

[32] AR 362–63.

[33] AR 628.

[34] AR 630.

[35] AR 632.

[36] *Id*.

found that Plaintiff "endorsed symptoms consistent with a severe Stimulant Use Disorder" and a diagnosis of Unspecified Depressive Disorder.[37] Whitley and Herrington's recommendations include "evidence-based treatment" to address Plaintiff's depression, develop health coping mechanisms, and to address Plaintiff's Stimulant Use Disorder, as well as a "protective environment (e.g. sober living, monitoring, and support groups) to further consolidate [Plaintiff's] gains made in therapy and help transfer these gains to an unprotected environment."[38]

Plaintiff was discharged from Pine Grove on April 15, 2019.[39] Plaintiff underwent a discharge assessment, which notes that Plaintiff did not express homicidal ideation, suicidal ideation, or auditory or visual hallucinations.[40] He was diagnosed as having severe stimulant use disorder, moderate ADHD, and moderate substance-induced insomnia, but the report notes that Plaintiff was "[i]n early remission" for stimulant use disorder, stable for his ADHD, and stable for depressive disorder.[41] Plaintiff claims that despite paying $18,500.00 toward the cost of his treatment, he has an outstanding balance of $92,500.00.[42]

## C.    *Procedural Background*

Prior to starting treatment at Pine Grove, Plaintiff submitted his claims to Defendant for

---

[37] *Id*.

[38] AR 633.

[39] AR 350.

[40] AR 351.

[41] AR 352.

[42] Rec. Doc. 28 at 9.

authorization, but Defendant denied coverage for the out-of-network services.[43] The Plan provides instructions for "Complaint, Grievance and Appeal Procedures" in Article XX.[44] The Plan states that a member requesting to change an "Adverse Benefit Determination" has two levels of appeal.[45] The first level includes an internal review of the Adverse Benefit Determination, and the second level mandates an external review by an Independent Review Organization ("IRO") randomly assigned by the Louisiana Department of Insurance.[46] The IRO decision "will be considered a final and binding decision on both the [Plan participant] and [Defendant] for purposes of determining coverage under a health Contract."[47] The Plan provides for an expedited appeal, in which Defendant will complete an internal review within 72 hours and an IRO appeal will be completed within 72 hours, if requested by a Plan participant.[48]

Plaintiff appealed Defendant's denial of his claims three times. Plaintiff's parents enlisted the help of Deanna Phillips ("Ms. Phillips"), an employee of HM Benefits, LLC ("HM Benefits"), during the appeal process.[49] On January 14, 2019, Ms. Phillips submitted an Appeal Request Form.[50] On that same date, Plaintiff's mother sent a letter of appeal.[51] On March 18, 2019,

---

[43] AR 132.

[44] AR 93.

[45] AR 93–96.

[46] *Id*.

[47] AR 96.

[48] AR 97.

[49] Rec. Doc. 28 at 10.

[50] AR 161.

[51] AR 162.

Defendant denied Plaintiff's first appeal, alleging that Plaintiff did not have out-of-network coverage.[52] In the letter denying Plaintiff's appeal, Defendant instructed Plaintiff to contact New Directions Behavioral Health ("New Directions") to obtain authorization for mental health services requests.[53]

On April 12, 2019, Plaintiff's counsel submitted a second appeal.[54] On January 31, 2020, Defendant requested Plaintiff's medical records from Pine Grove.[55] On March 2, 2020, Defendant forwarded these records to New Directions for external review.[56] On March 3, 2020, Allen Lavender, DO ("Dr. Lavender") performed an independent review of Plaintiff's claim based on Plaintiff's Pine Grove records.[57] Dr. Lavender determined that Plaintiff only required outpatient care and that his in-patient treatment was medically unnecessary.[58] Therefore, Plaintiff's second appeal was denied.

On December 30, 2019, Plaintiff filed a Petition in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[59] On May 14, 2020, Defendant removed the matter to this Court pursuant to 28 U.S.C. § 1331.[60]

---

[52] AR 212.

[53] Id.

[54] AR 227.

[55] AR 272.

[56] AR 314.

[57] AR 1117–18.

[58] Id.

[59] Rec. Doc. 1-2.

[60] Rec. Doc. 1.

On June 20, 2020, Plaintiff submitted a third appeal to New Directions.[61] On August 5, 2020, Dr. LaRon Phillips ("Dr. Phillips") completed an independent review based on Plaintiff's Pine Grove records.[62] Dr. Phillips determined that Plaintiff did not require in-patient treatment.[63] Therefore, Plaintiff's third appeal was denied.

On January 21, 2021, this Court issued an ERISA Briefing Order.[64] On March 9, 2021, Plaintiff filed a brief in support of review of Defendant's denial of his claims.[65] On March 31, 2021, Defendant filed a brief.[66] On April 9, 2021, with leave of Court, Plaintiff filed a reply brief.[67] On May 5, 2021, the Court held oral argument on this administrative appeal.[68]

There is no dispute that the Plan is governed by ERISA.[69] It is also undisputed that the Plan "vests the plan administrator [Defendant] with full discretionary authority to determine eligibility for benefits and to construe the terms of the plan," and that ERISA preempts any state law claims brought by Plaintiff regarding the Plan.[70]

---

[61] AR 1209.

[62] AR 1232.

[63] *Id*.

[64] Rec. Doc. 24.

[65] Rec. Doc. 28.

[66] Rec. Doc. 36.

[67] Rec. Doc. 39.

[68] Rec. Doc. 33.

[69] Rec. Doc. 20.

[70] *Id.* (internal quotation marks omitted).

## II. Parties' Arguments

### A.   *Plaintiff's Arguments in Support of His Claim for Benefits*

Plaintiff first argues that his treatment at Pine Grove for mental health and substance use disorder was covered under the Plan.[71] Plaintiff alleges that the Plan specifically provides coverage for treatment of both.[72] While Plaintiff used an out-of-network provider, Plaintiff contends that the Plan specifically allowed participants to use a non-network provider if the services required could not be provided by an in-network provider within a 75-mile radius of the participant's home.[73] Plaintiff alleges that there was no provider that would treat him within 75 miles of his house, and the only treatment center that would admit him was Pine Grove.[74] Plaintiff claims that he attempted to obtain authorization from Defendant prior to receiving treatment from Pine Grove, but that Defendant "denied [Plaintiff]'s request for benefits and did not even attempt to investigate the issues."[75]

Plaintiff next argues that Defendant's denial of benefits was arbitrary and capricious.[76] Plaintiff contends that Defendant "ignored relevant medical information in determining whether to provide benefits for [Plaintiff's] treatment at Pine Grove," including reports of Plaintiff's

---

[71] Rec. Doc. 28 at 19.

[72] *Id.*

[73] *Id.* at 20.

[74] *Id.*

[75] *Id.*

[76] *Id.* at 21.

11

treating physicians, Dr. Markopolous and Dr. Gervey.[77] Plaintiff alleges that he appealed Defendant's denial of benefits three times and each time, Defendant "refused to consider the exception for non-network benefits, the fact that [Defendant] network providers denied treatment, and the essential medical records provided to them."[78]

Plaintiff alleges that the first time he appealed, Defendant denied his appeal by "simply stat[ing] that Pine Grove was out-of-network and no benefits were allowed."[79] Plaintiff contends that Defendant failed to account for the Plan's exception for non-network providers if a participant could not obtain services within 75 miles of their home.[80] Plaintiff alleges that "[t]here is not one shred of evidence that [Defendant] . . . attempted to determine whether a [Defendant] network provider could treat [Plaintiff] or whether [Defendant] network provider denied [Plaintiff] benefits."[81]

For his second appeal, Plaintiff claims that Dr. Lavender reviewed Plaintiff's records but "without explanation disregarded the psychological evaluation" performed by Plaintiff's doctors at Pine Grove.[82] Finally, Plaintiff alleges that the doctor who reviewed his claim for his third appeal, Dr. Phillips, "simply ignored or remained silent on key pieces of evidence making factually

---

[77] *Id.*

[78] *Id.* at 21–22.

[79] *Id.* at 22.

[80] *Id.*

[81] *Id.*

[82] *Id.*

incorrect statements."[83] On all three appeals, Plaintiff contends that "when given opportunities to make a reasoned judgment, [Defendant] utterly failed" because Defendant "and/or those on its behalf did not reach their decision based on a principled reasoning process; rather, they quickly reviewed the Pine Grove medical records and only selected self-serving aspects of that record without considering the total circumstances at issue."[84]

Further, Plaintiff argues that Defendant's denial of benefits was procedurally flawed.[85] Plaintiff alleges that a plan administrator is required to provide a participant whose claim has been denied with adequate notice in writing, "setting forth specific reasons for such denial."[86] Plaintiff claims that a plan administrator must also "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."[87] Plaintiff alleges that for urgent claims, such as Plaintiff's, a plan administrator must notify the participant of the plan's determination "within 72 hours."[88] Plaintiff contends that Defendant failed to provide Plaintiff with proper notice of denial of Plaintiff's claims and failed to decide Plaintiff's claims within 72 hours.[89] Further, during the appeal process, Plaintiff alleges that Defendant "waited more than two months to process the

---

[83] *Id.* at 23.

[84] *Id.* at 24.

[85] *Id.* at 25.

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.*

appeal," greatly prejudicing Plaintiff because "by that time he had received two months of inpatient care" and had incurred great cost.[90]

Finally, Plaintiff seeks attorney's fees under 29 U.S.C. § 1132(g).[91] Plaintiff contends that he has shown a degree of success on the merits and is thus entitled to attorney's fees.[92]

**B.      *Defendant's Arguments in Opposition to Plaintiff's Claim for Benefits***

Defendant claims that its denial of Plaintiff's out-of-network claim was based on a fair, legally correct reading of the Plan.[93] Defendant contends that the plain language of the Plan provides coverage for services rendered by in-network, not out-of-network, providers.[94] Defendant alleges that Pine Grove is an out-of-network provider and therefore, Defendant was correct in denying Plaintiff's claim under the Plan.[95]

Defendant concedes that the Plan allows for out-of-network coverage in two situations: (i) when services are not available within a 75-mile radius of the participant's home and Defendant issues written approval to obtain the out-of-network services or (ii) the participant has a medical emergency and is unable to obtain in-network care.[96] Defendant contends that neither applies to Plaintiff's out-of-network treatment.[97] Defendant claims that Plaintiff has not provided any

---

[90] *Id.* at 26.

[91] *Id.*

[92] *Id.*

[93] Rec. Doc. 36 at 15.

[94] *Id.*

[95] *Id.* at 16.

[96] *Id.*

[97] *Id.*

14

evidence of facilities within a 75-mile radius from his home at which he attempted to obtain treatment prior to being admitted at Pine Grove.[98] Defendant alleges that no providers outside of Pine Grove contacted Defendant regarding treatment for Plaintiff and that Plaintiff himself told Defendant that he refused to accept treatment in the New Orleans area.[99]

Moreover, Defendant contends that Plaintiff never obtained written authorization from Defendant prior to receiving out-of-network services.[100] Further, Defendant claims that Plaintiff was not experiencing a medical emergency at the time of his admission to Pine Grove.[101] Therefore, Defendant alleges that Plaintiff's treatment at Pine Grove does not fall under the Plan.[102] Defendant claims that "if the Plan was interpreted to provide benefits as Plaintiff argues, that interpretation would create significant unanticipated costs, thereby preventing [Defendant] from being able to effectively administer the ERISA Plan."[103]

Alternatively, Defendant alleges that it did not abuse its discretion by denying Plaintiff's claim because Plaintiff's treatment was not medically necessary and therefore was not covered by the Plan.[104] Defendant claims that none of Plaintiff's Pine Grove medical records "reflect any emergency needs," and contends that Plaintiff's reliance on Dr. Markopoulos' report is misplaced

---

[98] *Id.* at 16–17.

[99] *Id.* at 17.

[100] *Id.*

[101] *Id.*

[102] *Id.* at 18.

[103] *Id.*

[104] *Id.* at 19, 21.

because the report was made eighteen months after Plaintiff's admission to Pine Grove and after benefits had been denied.[105] Defendant points to the two independent reviews it had done of Plaintiff's request for out-of-network coverage, by Dr. Lavender and Dr. Phillips, and claims that both independently concluded that Plaintiff could have been treated through outpatient care.[106] Defendant contends that the Plan does not cover treatment that is not medically necessary and thus even if Plaintiff had sought in-network treatment, his claim still would have been denied under the Plan.[107]

### C.   *Plaintiff's Reply in Further Support of His Claim for Benefits*

In reply, Plaintiff contends that Defendant's interpretation of the Plan is inconsistent with a plain reading of the Plan.[108] Plaintiff alleges that the Plan "does not automatically deny coverage for services from an out-of-network provider" and instead guarantees coverage for out-of-network claims if there is not an in-network provider within 75 miles of a participant's home.[109] Plaintiff claims that Defendant, not Plaintiff, must determine under the terms of the Plan that in-network services were not available to Plaintiff within a 75-mile radius of Plaintiff's home.[110] Plaintiff contends that he did identify to Defendant an in-network provider that refused to treat him.[111]

---

[105] *Id.* at 19–20.

[106] *Id.* at 20.

[107] *Id.* at 20–21.

[108] Rec. Doc. 39 at 3.

[109] *Id.*

[110] *Id.*

[111] *Id.* at 4.

Plaintiff alleges that Defendant failed to contact this in-network provider or investigate whether an in-network provider could have treated Plaintiff.[112] Plaintiff claims that this choice "puts [Defendant's] decision to deny benefits or even to consider the exceptions in the Plan, outside of the continuum of reasonableness."[113]

Further, Plaintiff argues that his treatment with Pine Grove was medically necessary.[114] Plaintiff highlights the reports of Dr. Markopoulos and Dr. Gervey, both of which documented Plaintiff's risk of harm to himself.[115] Plaintiff alleges that Dr. Lavender and Dr. Philips ignored relevant medical data and relied on the New Directions Medical Necessity Criteria in crafting their reports, a document that has not been produced to Plaintiff.[116] Plaintiff also notes that Dr. Philips and Dr. Lavender, using the same criteria, came to different conclusions regarding the amount of care Plaintiff needed.[117] Plaintiff contends that Defendant's choice to rely on Dr. Lavender and Dr. Philips was "arbitrary and capricious because it ignored pertinent medical records," including those of Plaintiff's treating physicians.[118]

---

[112] *Id.* at 4–5.

[113] *Id.* at 5.

[114] *Id.* at 6.

[115] *Id.* at 7.

[116] *Id.*

[117] *Id.*

[118] *Id.* at 8–9.

### III. Standard of Review for ERISA Claims

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court."[119] When reviewing a denial of benefits made by an ERISA plan administrator, the Court applies a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[120] In such cases, the reviewing court applies an abuse of discretion standard to the plan administrator's decision to deny benefits.[121]

In this case, the parties agree that the Plan "vests the plan administrator [Defendant] with full discretionary authority to determine eligibility for benefits and to construe the terms of the plan."[122] Therefore, as the Plan empowers Defendant with discretionary authority to determine eligibility for benefits and to construe the plan's terms, the Court applies an abuse of discretion standard to review Defendant's decision to deny Plaintiff's claim for out-of-network benefits.

The Fifth Circuit has articulated a three-step process for review of a plan administrator's interpretation of its plan. First, the court "must determine the legally correct interpretation of the plan" and whether the administrator gave the plan a legally correct reading.[123] If the plan administrator's interpretation was legally correct, there is no abuse of discretion.[124] If the plan

---

[119] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 105 (2008) (citing 29 U.S.C. § 1001 *et seq.*; § 1132(a)(1)(B)).

[120] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[121] *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (citing *Bruch*, 489 U.S. at 115).

[122] Rec. Doc. 20 (internal quotation marks omitted).

[123] *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001); *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246, n.2 (5th Cir. 2009).

[124] *Gosselink*, 272 F.3d at 726.

administrator's interpretation was legally incorrect, then the court must ask whether the plan administrator's decision constituted an abuse of discretion.[125]   The Fifth Circuit has held that a court may proceed directly to the second inquiry if the court can more readily determine that the decision was not an abuse of discretion.[126] Finally, under the third step, the Court must determine whether the plan administrator's denial of benefits was "supported by substantial evidence."[127]

## IV. Analysis

Plaintiff seeks reimbursement from Defendant for out-of-network treatment. Plaintiff contends that Defendant misapplied the terms of the Plan to Plaintiff's out-of-network claim.[128] Plaintiff further argues that Defendant acted arbitrarily when refusing to fairly review Plaintiff's claim.[129] Finally, Plaintiff argues that Defendant's denial of benefits was procedurally flawed.[130]

Under the traditional ERISA analysis, the Court will first determine whether Defendant's interpretation of the Plan was legally correct.[131] If the Court finds that Defendant's interpretation of the Plan was legally correct, the inquiry ends. If the Court finds that Defendant's interpretation

---

[125] *Id.*   This test applies only in cases, such as the one here, where the administrator has the authority to interpret the plan and participants' eligibility for benefits.

[126] *Holland,* 576 F.3d at 246, n.2.

[127] *Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 483 (5th Cir. 2017).

[128] Rec. Doc. 28 at 20; Rec. Doc. 39 at 3.

[129] Rec. Doc. 28 at 21.

[130] *Id.* at 25.

[131] However, where, as here, "there have been no allegations that the construction of the plan was not uniform or that there were unanticipated costs, the court may direct its inquiry to the second prong of the test and evaluate whether the interpretation of the plan was fair and reasonable." *Sankey v. Metro. Life Ins. Co.*, No. 12-1135, 2013 WL 1868365, at *4 (E.D. La. May 2, 2013) (Barbier, J.).

was not legally correct, the Court will then determine whether Defendant's denial of out-of-network benefits to Plaintiff was an abuse of discretion and whether such denial was supported by substantial evidence.

**A.**   ***Whether Defendant's Interpretation of the Plan was Legally Correct***

First, the Court must determine if Defendant's interpretation of the Plan is legally correct. In determining whether Defendant's interpretation of the Plan is legally correct, the Court must consider: "(1) whether the administrator has given the Plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the Plan, and (3) any unanticipated costs resulting from different interpretations of the Plan."[132] "ERISA plans must be written to be understood by the average plan participant, so plans are interpreted in their ordinary and popular sense as would a person of average intelligence and experience."[133] "The most important factor to consider is whether [Defendant's] interpretation is consistent with a fair reading of the plan[]."[134] The Court must consider whether the administrator's decision at the time of denial of benefits was unreasonable.[135]

The Plan at issue in this litigation, "generally pays Benefits only when services are obtained from a Provider who is in the [Defendant] Network."[136] The Plan, however, provides for two

---

[132] *Shedrick v. Marriot Int'l, Inc.*, No. 11–0820, 2012 WL 601881, at *8 (E.D. La. Feb. 23, 2012).

[133] *Encompass Off. Sols., Inc. v. Louisiana Health Serv. & Indem. Co.*, 919 F.3d 266, 282 (5th Cir. 2019), *cert. denied sub nom. Louisiana Health Serv. & Indem. Co. v. Encompass Off. Sols.*, 140 S. Ct. 221 (2019) (internal quotation marks omitted).

[134] *Id.*

[135] *Hall v. Nw. Nat. Life Ins. Co.*, No. 93-2459, 1994 WL 532593, at *1 (E.D. La. Sept. 28, 1994) (Sear, C.J.).

[136] AR 11.

exceptions to this general rule, providing coverage for out-of-network services if: (i) Defendant determines that the out-of-network services are not available from an in-network provider within a 75-mile radius of Plaintiff's home and Defendant issues written approval to Plaintiff to obtain the out-of-network services or (ii) Plaintiff has an Emergency Medical Service and is unable to obtain the care from an in-network provider.[137] The Plan provides that under the first exception, Defendant will approve out-of-network treatment "only if [Defendant] determine[s] that the services **cannot** be provided by a Network Provider within a seventy-five (75) mile radius of the Member's home."[138]

The parties appear to agree on the general interpretation of the Plan as providing only in-network coverage with the two exceptions listed above. However, the parties disagree as to which party has the burden of showing whether or not Plaintiff could have received in-network care within 75 miles of his home under the Plan's first exception.

According to Plaintiff, under a plain reading of the Plan, it is Defendant's duty, not Plaintiff's, to determine that treatment is not available from an in-network provider within a 75-mile radius of Plaintiff's home.[139] Plaintiff urges the Court to read the Plan as mandating that Defendant "make an inquiry and investigation" as to whether an in-network provider is available within 75 miles of Plaintiff's home.[140] Since providers who denied him treatment would not submit a claim or inquiry to Defendant, Plaintiff asserts that the burden to prove that no in-network

---

[137] *Id.*

[138] AR 60.

[139] Rec. Doc. 39 at 3–4.

[140] *Id.* at 4.

treatment was available cannot fall on Plaintiff.[141] Plaintiff alleges that the record is "devoid of any attempt" by Defendant to contact in-network providers to determine if they would treat Plaintiff, a choice by Defendants that Plaintiff contends was "outside the continuum of reasonableness" and was based on a legally incorrect reading of the Plan.[142]

By contrast, Defendant argues that its denial of benefits to Plaintiff was based on a legally correct reading of the Plan.[143] Defendant alleges that the Plan is clear, and provides for in-network benefits if Defendant determines services are not available from an in-network provider within a 75-mile radius of the participant's home and Defendant issues written approval to obtain the out-of-network services.[144] Defendant claims that Plaintiff failed to provide evidence proving that in-network providers would not accept Plaintiff for treatment and therefore, the exception does not apply and Plaintiff's out-of-network treatment is not covered by the Plan.[145]

While Plaintiff argues that the 75-mile out-of-network exception places the burden on Defendant to "make an inquiry and investigation into this issue" and contact in-network providers to "determine whether those facilities could treat [Plaintiff],"[146] the provision does not, by its plain language, appear to require such steps by Defendant. The baseline coverage included in the Plan is in-network treatment. The Plan provided a website through which Plaintiff could have

---

[141] *Id.*

[142] *Id.* at 4–5.

[143] Rec. Doc. 36 at 15.

[144] *Id.* at 16.

[145] Rec. Doc. 36.

[146] Rec. Doc. 39 at 4.

discovered participating doctors and instructs participants to call customer service with any Plan questions.[147] Only in exceptional circumstances are participants, including Plaintiff, covered for out-of-network care, including if Defendant "determine[s] that services are not available" from an in-network provider.

Given that out-of-network care is the exception, the plain reading of the Plan supports the notion that some evidence would need to be provided by Plaintiff to Defendant to justify this out-of-network care and to break from the Plan's general rule that only in-network services are covered. While Plaintiff alleges that he provided to Defendant the name of an in-network facility, Longleaf Hospital, that refused to treat Plaintiff, there is nothing in the record showing that Plaintiff provided this information to Defendant prior to beginning treatment at Pine Grove, at the time of Defendant's initial denial of coverage. Moreover, this one name is insufficient to prove that Plaintiff could not have obtained treatment from *any* in-network provider.

Based on the above, Defendant's denial of benefits to Plaintiff was based on a legally correct reading of the Plan. Further, in the case of an ambiguous provision, because Defendant retained "full discretionary authority to determine eligibility for Benefits and/or construe the terms of" the Plan,[148] Fifth Circuit precedent instructs that "by giving [Defendant] complete discretion to interpret the plans, if there had been an ambiguity, [Defendant] was empowered to resolve it, exercising interpretive discretion."[149] Given that Defendant's denial of benefits was a legally

---

[147] AR 113.

[148] AR 83.

[149] *High v. E-Sys. Inc.*, 459 F.3d 573, 579 (5th Cir. 2006).

correct interpretation of the Plan, the Court finds in favor of Defendant.

**B.**     ***Whether Defendant Abused its Discretion in Denying Plaintiff's Benefits & Whether Defendant's Denial Was Based on Substantial Evidence***

Although the Court need not proceed to steps two and three of a traditional ERISA analysis after determining that Defendant utilized a correct interpretation of the Plan in denying Plaintiff's claim, the Court notes that steps two and three further support Defendant's denial of coverage. Under steps two and three of a traditional ERISA analysis, the Court must determine whether Defendant abused its discretion in denying Plaintiff's claim and whether substantial evidence supports Defendant's denial. The Court's review of factual determinations under the abuse of discretion standard is limited to the evidence contained in the administrative record.[150] As a claimant under §1132(a)(1)(B), Plaintiff bears "the initial burden of demonstrating . . . that [the] denial of benefits under an ERISA plan [was] arbitrary and capricious."[151] "[T]he law requires only that substantial evidence support a plan fiduciary's decision . . . *not* that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability."[152] The Fifth Circuit instructs that "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail."[153] The Fifth Circuit has held:

> Substantial evidence is more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . An arbitrary decision is one made without a rational connection

---

[150] *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333 n.5 (5th Cir. 2001) (noting, as an exception to this general rule, that a district court may consider evidence outside the administrative record if it will assist the court in understanding the medical terminology or practice related to the claim).

[151] *Anderson,* 619 F.3d at 512–13.

[152] *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004).

[153] *Id.*

> between the known facts and the decision or between the facts and the evidence…. Ultimately, [the Court's review] of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end.[154]

Moreover, "when a court reviews a plan administrator's decision for abuse of discretion, it must 'not disturb an administrator's decision if it is reasonable, *even if the court would have reached a different decision*.'"[155]

The Court must additionally measure the conflict of interest that arises from the dual role of an entity acting as an ERISA plan administrator and also as a payer of plan benefits, as a factor in determining whether the plan administrator has abused its discretion in denying benefits.[156] However, if a claimant presents no other evidence (other than the company's dual role) as to the degree that a conflict exists and affects the decision to deny benefits, the Court reviews the administrator's decision "with only a modicum less deference than [it] otherwise would."[157] Plaintiff has presented no evidence to establish a conflict of interest beyond Defendant's dual role; thus, the Court reviews Defendant's determination with substantial deference.[158]

Defendant did not abuse its discretion in denying Plaintiff's claim. The Plan specifically

---

[154] *Corry v. Liberty Life Assur. Co. of Bos.*, 499 F.3d 389, 398–99 (5th Cir. 2007) (citations and internal quotations omitted).

[155] *McCorckle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 459 (5th Cir. 2014) (citing *Donovan v. Eaton Corp. Long Term Disability Plan,* 462 F.3d 321, 326 (4th Cir.2006) (emphasis in original)).

[156] *Glenn*, 554 U.S. at 108.

[157] *Corry*, 499 F.3d at 398 (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 301 (5th Cir. 1999) (en banc)).

[158] *See Anderson v. Cytec Indus., Inc.*, No. 07-5518, 2009 WL 911296, at *6 (E.D. La. Mar. 27, 2009) (Feldman, J.), *aff'd,* 619 F.3d 505 (5th Cir. 2010); *Holland*, 576 F.3d at 249.

exempts any "[s]ervices, treatments, procedures, equipment, drugs, devices, items or supplies that are not Medically Necessary," whether in-network or out-of-network.[159] The Plan defines Medically Necessary as:

> Healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies that a Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
>   A. in accordance with nationally accepted standards of medical practice;
>   B. clinically appropriate, in terms of type, frequency, extent, level of care, site and duration, and considered effective for the patient's illness, injury or disease; and
>   C. not primarily for the personal comfort or convenience of the patient or Provider, and not more costly than alternative services, treatment, procedures, equipment, drugs, devices, items or supplies or sequence thereof and that are as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease . . . .[160]

The administrative record supports Defendant's denial, providing ample support for the fact that Plaintiff's in-patient treatment was not medically necessary. Defendant's denial is supported by the medical report of both Dr. Lavender and Dr. Phillips. On March 3, 2020, Dr. Lavender performed an independent review of Plaintiff's claim based on Plaintiff's Pine Grove records, and determined that Plaintiff only required outpatient care.[161] Dr. Lavender found that Plaintiff had "no delusions," "[n]o aggressive or threatening behaviors," and no suicidal ideation.[162] Dr. Lavender's report states that Plaintiff is "functioning at his baseline" and Plaintiff's

---

[159] AR 63.

[160] AR 25.

[161] AR 1117–18.

[162] *Id.*

care team "reports that [Plaintiff is] able to function day to day."[163] Dr. Lavender found that Plaintiff did "not have a medical condition that requires [Pine Grove's] level of care" nor "require[d] residential care to keep safe."[164] Dr. Lavender found that Plaintiff was "not thinking about harming anyone" and was "not at a high risk to be hospitalized."[165] In sum, Dr. Lavender found that Plaintiff could "safely be treated in a less restrictive setting such as Outpatient" and found that only outpatient care was medically necessary.[166]

Dr. Lavender's findings were thereafter backed up by Dr. Phillips, who conducted a separate review on August 5, 2020. After Plaintiff submitted his third appeal to New Directions on June 20, 2020, Dr. Phillips completed an independent review and determined that Plaintiff did not require in-patient treatment.[167] Relying on Plaintiff's medical records from Pine Grove, Dr. Phillips found that Plaintiff, at the time of admission to Pine Grove, "had no active thoughts, intent or plan of suicide/self harm" and "was not described as violent, homicidal, aggressive, psychotic, threatening or manic."[168] Dr. Phillips found that "[t]reatment of an adequate intensity and frequency could have been provided in a less restrictive level of care with a reasonable expectation of clinical benefit and stabilization as the presenting symptoms were not suggestive of an imminent

---

[163] AR 1118.

[164] *Id.*

[165] *Id.*

[166] *Id.*

[167] AR 1209, 1232.

[168] AR 1232.

threat of harm to himself or others nor indicative of grave disability."[169] He further found that "[f]rom a clinical perspective, adequate support, medication management, psychoeducation and clinical observation could have been provided in a less restrictive setting to safely and appropriate address [Plaintiff]'s mental health condition."[170] Therefore, Dr. Phillips found "intensive outpatient" care to be medically necessary and Plaintiff's third appeal was denied on the basis that Plaintiff's treatment at Pine Grove was not medically necessary.[171]

Plaintiff contends that Defendant, and the independent reviewers, acted arbitrarily by not considering Plaintiff's past medical records, including records from Plaintiff's treatment with Dr. Markopolous and Dr. Gervey, as well as Herrington and Whitley's evaluation at Pine Grove.[172] As an initial matter, although a plan administrator may not arbitrarily ignore a treating physician's opinion, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."[173] Additionally, Plaintiff's complaint that "[n]either Dr. Lavender nor Dr. Phillips ever met [Plaintiff], and it seems odd that after a single day reviewing a file, they could offer more insight than those that treated [Plaintiff]" is misplaced.[174] "[A]n independent physical examination

---

[169] *Id.*

[170] *Id.*

[171] AR 1233, AR 1235.

[172] *See, e.g.*, Rec. Doc. 28 at 16.

[173] *Holland*, 576 F.3d at 250.

[174] Rec. Doc. 28 at 24.

28

is not a requirement. A review of the claimant's medical records is sufficient to support the opinion of a doctor appointed by the plan administrator."[175]

Moreover, it is not clear that Dr. Lavender even had access to Plaintiff's medical records with Dr. Markopolous or Dr. Gervey at the time of his review. Plaintiff admits that reports from these two doctors may not have been included in Plaintiff's Pine Grove medical records which were given to Dr. Lavender for his independent review.[176] Dr. Markopolous' letter outlining Plaintiff's medical history and treatment is dated June 12, 2020,[177] whereas Dr. Lavender's review was completed three months prior on March 3, 2020.[178] Further, Plaintiff provides no evidence that Dr. Lavender was given Dr. Gervey's report to review, and has equally failed to show that such report, if provided, would have made a material difference in Dr. Lavender's assessment. Dr. Lavender was reviewing Plaintiff's medical status in early 2019; Dr. Gervey's report focuses on testing of Plaintiff done in January 2017.

Plaintiff attached both reports to his third appeal, reviewed by Dr. Phillips, thereby seeming to confirm that the reports were not previously available in Plaintiff's medical records at the time of Dr. Lavender's review.[179] While Plaintiff contends that Dr. Phillips disregarded the reports in reviewing Defendant's denial of Plaintiff's claim, Plaintiff has failed to provide evidence that

---

[175] *Chapman v. Prudential Life Ins. Co. of Am.*, 267 F. Supp. 2d 569, 579 (E.D. La. 2003) (citing *Gooden*, 250 F.3d at 335) (Duval, J.).

[176] Rec. Doc. 28 at 16.

[177] AR 1213.

[178] AR 1117.

[179] AR 1209-1219.

supports his contention that Dr. Phillips did not consider such reports in completing his review. And again, Dr. Phillips review was based on Plaintiff's medical status in January 2019; Dr. Gervey's report focused on testing done in January 2017.

Plaintiff likewise provides no evidence in support of his argument that the report submitted by Herrington and Whitley was not considered by Dr. Lavender or Dr. Phillips. Dr. Lavender and Dr. Phillips reviewed Plaintiff's Pine Grove medical records, which included Herrington and Whitley's report. While Herrington and Whitley's report recommends that Plaintiff "receive evidence-based treatment" to address his Stimulant Use Disorder and depression, such report never endorses inpatient treatment as medically necessary.[180] Therefore, Plaintiff has failed to show that Dr. Lavender or Dr. Phillips did not utilize such report in arriving at their ultimate conclusions concerning the medical necessity of Plaintiff's treatment.

Accordingly, because Defendant's decision to deny Plaintiff's claim for out-of-network treatment is supported by substantial evidence in the record, Defendant did not abuse its discretion.

**C.      *Whether Defendant's Denial of Benefits Was Procedurally Flawed***

Plaintiff's final argument in favor of relief is that Defendant's denial of benefits was procedurally flawed. Plaintiff takes issue with both the timing of the denial of coverage and the notice of the denial of coverage provided by Defendant.

Plaintiff cites to 28 U.S.C. § 1133, which provides that for plans covered by ERISA:

[E]very employee benefit plan shall
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be

---

[180] AR 633.

> understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."[181]

Plaintiff also cites to 29 C.F.R. § 2560.503-1(f)(2)(i), which provides, in pertinent part:

> Urgent care claims. In the case of a claim involving urgent care, the plan administrator shall notify the claimant of the plan's benefit determination (whether adverse or not) as soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the claim by the plan, unless the claimant fails to provide sufficient information to determine whether, or to what extent, benefits are covered or payable under the plan.

"Challenges to ERISA procedures are evaluated under the substantial compliance standard."[182]

As an initial matter, the record does not support Plaintiff's contention that 29 C.F.R. § 2560.503-1(f)(2)(i) applies to Plaintiff's claim. In Plaintiff's admission assessment at Pine Grove, it was reported that Plaintiff "feels irritable, has impaired impulse control, especially with decision making. Has trouble sleeping."[183] It further summarizes Plaintiff's mood as including anxiety, depression, grief or loss, panic attacks, worrying, mood swings, and guilt, and states:

> He reports anxiety since 12. Depression since 15. He feels grief over losing his grandpa 2 years ago. He has panic attacks but not as often as he used to. He worries frequently about safety [sic] things he says. He feels guilt about taking his medicine more than was prescribed and it making him have to come into treatment. He notices mood swings.[184]

There is no indication in the report that immediate treatment was necessary or urgent. Even so,

---

[181] *Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 366 (5th Cir. 2013) (citing 29 U.S.C. § 1133 (2006)) .

[182] *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009).

[183] AR 345.

[184] AR 346.

31

Defendant's initial denial of coverage to Plaintiff was immediate.[185]

Further, Defendant's denial of Plaintiff's first appeal also substantially complied with ERISA procedures under 29 C.F.R. § 2560.503-1(i). Plaintiff contends that Defendant's failure to accept Plaintiff's appeal in January 2019 greatly prejudiced Plaintiff because by the time the appeal was decided in March, "he had received two months of inpatient care" and accrued large medical bills.[186] However, Plaintiff has failed to point to any evidence that Defendant acted improperly during this two month period in which Defendant requested authorization from Plaintiff, an adult at the time of treatment, prior to starting the appeal process.

The required authorization was submitted on March 7, 2019.[187] Defendant's review began on March 13, 2019, and the appeal was denied on March 18, 2019.[188] As stated above, the record does not support a finding the Plaintiff's treatment was urgent. Therefore, this decision was timely under 29 C.F.R. § 2560.503-1(i).

Moreover, even if Plaintiff's claims were considered urgent in March 2019, Defendant substantially complied with 29 C.F.R. § 2560.503-1(i)(2)(i). Defendant rendered a decision five days after receipt of Plaintiff's appeal. The Court notes that two of the five days involved in Defendant's review were weekend days. Moreover, Plaintiff has not shown how these extra two days of response time prejudiced Plaintiff. Plaintiff had already been in treatment since January 14, 2019 and incurred large costs prior to the uploading of the appeal on March 13, 2019.

---

[185] AR 132.

[186] *Id*.

[187] AR 141.

[188] AR 142.

32

Plaintiff also alleges that he was not provided proper notice by Defendant of the denial of Plaintiff's claim under 28 U.S.C. § 1133. The only evidence in the record regarding Defendant's initial denial of Plaintiff's claim is a note in Defendant's system that a provider "called to get general benefits for substance abuse" and that an employee of Defendant "advised that member has straight HMO and no oon benefits."[189] There does not appear to have been written notice provided to Plaintiff that Plaintiff's claims were being denied. However, Plaintiff was provided with a reason for denial of Plaintiff's claim and put on notice that Plaintiff's claim was denied.[190] Under the appropriate "substantial compliance" standard, Defendant's lack of written notice is not detrimental to Defendant's denial of Plaintiff's claim.

## D.  *Fees, Costs and Interest*

Pursuant to 29 U.S.C. § 1132(g), the Court, in its discretion, may allow a reasonable attorney's fees and costs award to either party. The Fifth Circuit has articulated five factors for district courts to consider in determining whether to award attorney's fees: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions."[191]

---

[189] AR 132.

[190] *Id.*

[191] *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

33

However, the Fifth Circuit also stated that "[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address."[192]

Plaintiff's brief includes a request for attorney's fees.[193] 29 U.S.C. § 1132(g)(1) permits the Court to award attorney's fees and costs "to either party."[194] Although a litigant need not be the "prevailing party" to obtain a fees and costs award, the United States Supreme Court explained that "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)."[195] Plaintiff has not satisfied that standard.  Thus, Plaintiff is not entitled to an award for attorney's fees and costs.

## V. Conclusion

Based on the foregoing, the Court affirms the denial of benefits and dismisses Plaintiff's claims with prejudice. The Court declines to award attorney's fees or costs to either party. Accordingly,

---

[192] *Id.*

[193] Rec. Doc. 28 at 26.

[194] 29 U.S.C. § 1132(g)(1).

[195] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010).

34

**IT IS HEREBY ORDERED** that Defendant HMO Louisiana, Inc.'s decision denying benefits to Plaintiff Andre Bergeron under the terms of the Plan is **AFFIRMED.** Plaintiff Andre Bergeron's claims against Defendant HMO Louisiana, Inc. are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this ___26th___ day of July, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

35